**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

ESTATE OF ANDREW TAYLOR, by       )
And through its special administrator   )
DONNA CASTLEBERRY, and DONNA    )
CASTLEBERRY, individually,            )
                                                        )
                    Plaintiffs,                      )
                                                        )
v.                                                       )        Case No.  20-1361-KHV-GEB
                                                        )
FANUC AMERICA CORPORATION,      )
VIZIENT MANUFACTURING             )
SOLUTIONS, INC., MMKB, LLC,          )
                                                        )
                    Defendants,                     )
                                                        )
and                                                     )
                                                        )
NEW HAMPSHIRE INSURANCE          )
COMPANY and MANPOWER U.S., INC.  )
_____)

**MEMORANDUM AND ORDER**

This matter is before the Court on two related motions.  Both motions are inseparably connected because they involve the same subpoenaed documents and the same legal arguments. Accordingly, the Court will rule on both motions within this Memorandum and Order.

Non-Party CNH Industrial America, LLC ("CNH") filed a Motion for Protective Order and to Quash ("Motion for Protective Order") on May 2, 2022, with a

corresponding Memorandum and Exhibits in Support of its Motion.[1] On the same day, the parties filed a Joint Motion and Combined Memorandum, and Exhibits, to Compel Document Production from CNH, ("Motion to Compel.")[2] The documents for which CNH filed its Motion for Protective Order are the same documents the parties seek to have produced.  The arguments in the briefings and responses are interchangeable.

After full consideration, hearing oral arguments, reviewing the supplemental briefs, and viewing certain documents *in camera,*[3] the Court **GRANTS in part and DENIES in part** both Motions.

## I.    Background[4]

This wrongful death and products liability case was removed to federal court from the District Court of Sedgwick County, Kansas based on diversity jurisdiction.  The estate of Andrew Taylor brings this action for injuries he suffered on November 20, 2019, ("the accident") while using a robotic arm purportedly designed and manufactured by Defendant Fanuc America Corporation.  At the time of the accident, Mr. Taylor was employed by Manpower U.S.A., Inc. and working at CNH's Wichita, Kansas location. Plaintiff subsequently amended her Complaint, adding additional Defendants Vizient, L.L.C.,

---

[1] ECF Nos. 83 and 84.

[2] ECF No. 85.

[3] Pursuant to ECF No. 98, CNH produced the hand-written statement of Wayne Vineyard, and documents identified in Rows 278, 286, 391, and 484 of its privilege log for inspection.

[4] Unless otherwise indicated, the information recited in this section is taken from the Complaint (ECF No. 1), Amended Complaint (ECF No. 26), Second Amended Complaint (ECF No. 32), Memorandum in Support of Motion for Protective Order (ECF No. 84), and Joint Motion to Compel by Defendant MMKB, LLC (ECF No. 85). This background information should not be construed as judicial findings or factual determinations.

Vizient Manufacturing Solutions, Inc., and MMKB, LLC.[5] Manpower U.S., Inc. and New Hampshire Insurance Company intervened in this case to protect any subrogation rights they may have as a result of the worker's compensation claim brought by the Estate of Andrew Taylor.[6]

During the course of discovery, Plaintiff caused a subpoena to be issued to CNH requesting multiple photographs, videos, and all investigative materials relating in any way to the death of Andrew Taylor.[7] Likewise, Defendant caused a subpoena to be issued to CNH, requesting, among other things, a video of the robotic arm during normal production when changing from a medium chassis to a large chassis, witness statements from CNH employees, and records related to any investigation done regarding any accident involving the same robotic arm.[8] CNH objected to producing many of the relevant documents based on the work product doctrine and submitted its privilege log to the parties. The parties and CNH conferred and made substantial progress in resolving their disputes. At this time, the documents that remain in question, as reflected in CNH's privilege log, are: (1) Witness Statements – rows 278, 286, 410, and 484; and (2) Photographs/Videos – rows 1-122, 132-201, 215-245, 361-364, 391, 393-397, and 418.

The witness statements in dispute include typewritten summaries of various CNH employee statements, taken some time after the accident; statement of a CNH employee

---

[5] Vizient, LLC was subsequently dismissed. (ECF No. 42.)
[6] The Motion to Intervene was initially brought by CNH Industrial, LLC and New Hampshire Insurance Company. (ECF No. 47.) The parties later stipulated the proper intervenors were New Hampshire Insurance Company and Manpower U.S., Inc., not CNH Industrial, LLC.
[7] ECF No. 67.
[8] ECF No. 71.

written on February 6, 2020; and typewritten summaries of various CNH employee interviews created on February 4, 2020. The videos and photographs in question include multiple short videos and photographs taken in late November 2019, on various dates spanning November 21-26. There are also several photographs and videos to which CNH objects from January and February 2020.   Finally, CNH objects to producing two PowerPoint presentations, one created in mid-February 2020 which addresses the CNH witness statements, and a second created on June 16, 2020, that includes photographs of the "operator's guardrail."

## II.   Compliance with D. Kan. Rule 37.2

Pursuant to D. Kan. Rule 37.2, this Court "will not entertain any motion to resolve a discovery dispute" unless the moving party has "conferred or has made reasonable effort to confer with opposing counsel" before filing a motion. The parties indicate they exchanged multiple emails and met and conferred with CNH. Based upon the parties' representations during oral arguments, the Court finds they have sufficiently complied with D. Kan. Rule 37.2.[9]

## III.   Discussion.

### A.  CNH's Arguments.

CNH argues the documents sought by the parties in this case were created at the direction of its attorney and are protected by the work product doctrine.  Alternatively, in its Motion for Protective Order, CNH argued the photographs and witness statements are

---

[9] ECF Nos. 84 and 85.

protected under the Kansas Self-Critical Analysis Privilege. However, during arguments before the Court, CNH acknowledged the privilege does not apply to the disputed documents and, therefore, abandoned any request for relief in that regard.

### B. The Parties' Position.

Jointly, the parties argue the work product doctrine is not applicable to the documents in question. Alternatively, they argue if the work product doctrine applies, either: 1) CNH waived its right to claim work product protection; or 2) The documents must be produced based on the exception set forth in Fed.R.Civ.P. 26(b)(3)(A).

### C. Applicable Law.

Discovery is governed by Fed. R. Civ. P. 26 which provides, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[10] "There is a presumption in favor of disclosure of information."[11] Though broadly construed, there are exceptions to Rule 26, including the doctrine at the heart of this discovery dispute – the work product doctrine. As held in *Hickman v. Taylor,* "Not even the most liberal of discovery theories can justify unwarranted inquiries into the files

---

[10] Fed. R. Civ. P. 26(b)(1).
[11] *Williams v. UnitedHealth Grp.*, No. 18-2096-HLT, 2020 WL 528604, at *1 (D.Kan. Feb. 3, 2020) (quoting *Gilmore v. L.D. Drilling, Inc*., No. 16-2416-JAR, 2017 WL 2439552, at *1 (D. Kan. June 6, 2017)).

and the mental impressions of an attorney."[12] The holding in *Hickman* was later incorporated into Fed.R.Civ.P. 26:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).[13]

Rule 26 requires the party seeking protection under the work product doctrine to prove three elements: 1) the materials sought to be protected are documents or tangible things; 2) they were prepared in anticipation of litigation or for trial; and 3) they were prepared by or for a party or a representative of that party.[14]

The Court must examine whether the requested documents were created in anticipation of litigation.[15]  The party requesting protection must demonstrate "the threat of litigation is 'real' and 'imminent'."[16] "Because litigation can, in a sense, be foreseen from the time of occurrence of almost any incident, courts have interpreted the [work product doctrine] to require a higher level of anticipation in order to give a reasonable scope to the immunity."[17] Courts have also extended work product to last beyond litigation, so the materials prepared for litigation remain protected after the termination of the

---

[12] 329 U.S. 495, 510, 67 S.Ct. 385 (1947).

[13] Fed.R.Civ.P. 26(b)(3)(A).

[14] *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D.Kan. 2000) (citing *Zapata v. IBP, Inc.,* 175 F.R.D. 574, 576 (D.Kan.1997); *Mackey v. IBP, Inc*., 167 F.R.D. 186, 200 (D.Kan. 1996).

[15] *Kannaday v. Ball*, 292 F.R.D. 640, 648 (D.Kan. 2013) (citing *Marten v. Yellow Freight Sys., Inc.,* No. 96–2013–GTV, 1998 WL 13244, at *10 (D.Kan. Jan. 6, 1998).

[16] *Id.* at 649.

[17] *U.S. Fire Ins. Co., et al. v. Bunge North American, et al*., 247 F.R.D. 656, 658 (D.Kan. 2007) (citing *Marten v. Yellow Freight System, Inc.,* No. 96-2013-GTV, 1998 WL 13244, at *10).

litigation for which they were prepared.[18] Work product protection also extends to closely related subsequent litigation.[19]

Despite work product protection, Rule 26 permits discovery of privileged documents when they are otherwise discoverable under Rule 26(b)(1) and the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.[20]

### 1. Factual Documents and/or Tangible Things are Protected by the Work Product Doctrine.

The parties essentially question whether fact documents can be considered work product. They argue photographs, videos, and witness statements merely depict facts and are not subject to protection.[21]   Courts have held witness statements, videos, and photographs are protected by the work product doctrine if all the other factors for work product protection are met.

The court in *McBride v. Medicalodges, Inc.*,[22] denied defendant's motion to compel certain witness statements. In its analysis, the court found the statements were work product and further analyzed production of the statements under Federal Rule of Civil Procedure 26(b)(3)(A). This District has held witness statements are protected by work

---

[18] *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 703 (10th Cir. 1998).
[19] *Id.*
[20] Fed.R.Civ.P. 26(b)(3)(A).
[21] ECF No. 85.
[22] Nos. 06–2535-JWL and 06-2536-JWL, 2008 WL 2157114, at *1-2 (D.Kan. May 22, 2008).

product when the objection to production is timely made, and the statements otherwise meet the requirements of the work product doctrine.[23]

This Court, in *Buehler v. Family Dollar, Inc.,* analyzed the production of video evidence under the work product doctrine.[24] The work product in question in that case was video footage of the plaintiff while at one of defendant's store locations. The Court's analysis was based upon whether the video was prepared in anticipation of litigation or in the normal course of business. The Court found the video in question was not created under the imminent threat of litigation but otherwise analyzed the video under the work product doctrine.[25] While the Court reached the conclusion that video surveillance the Defendant kept running at all times was not prepared in anticipation of litigation, the Court analyzed the video as potential work product, not simply as factual information that can never be protected by the work product doctrine.[26]  Additionally, in *Bohannon v. Honda Motor Co. Ltd.,* the court upheld plaintiff's objection to the production of a video prepared in anticipation of litigation.[27] Similarly, this District has also held the work product doctrine can be applied to photographs.[28]

Finally, the analysis for disclosure of work product makes it clear that fact documents and/or tangible things can be subject to the work product doctrine. "Work

---

[23] *Robinson v. City of Arkansas City, Kansas*, No. 10-1431-JAR, 2012 WL 1674255, at *2 (D.Kan. May 14, 2012).
[24] 17-1241-JTM, 2018 WL 296016, at *2 (D.Kan. January 4, 2018).
[25] *Id.* at *3.
[26] *Id.*
[27] 127 F.R.D. 536, 541 (D. Kan. 1989).
[28] *Johnson v. Gmeinder et al.,* 191 F.R.D. 638 (D.Kan. 2000.) (Discussing whether defendant waived work product protection for photos disclosed to their expert.).

product can be opinion work product, which some courts have held to be absolutely privileged, or non-opinion work product, i.e., fact work product, which may be discoverable under appropriate circumstances."[29] Based upon relevant caselaw and the circumstances of this case, the witness statements, photographs and videos are not merely fact documents that cannot be protected by the work product doctrine, but are documents and tangible things created by CNH which may be considered work product and protected from discovery. Having determined the discovery in dispute can be considered work product, the Court will now analyze whether the documents and tangible things in dispute in this case are, indeed, work product and, therefore, protected by the work product doctrine.

### 2.   CNH Prepared the Documents and Tangible Things in Anticipation of Litigation.

To determine whether documents were prepared in anticipation of litigation, review is made on "a case-by-case analysis, considering the unique factual context of the given problem."[30] CNH has the burden of showing it was under imminent threat of litigation at the time the documents in question were created.[31] Two prongs must be satisfied to show documents were prepared in anticipation of litigation: "1) causation – whether the document was created because of the anticipation of litigation; and 2) reasonableness –

---

[29] *In re Qwest Communications Internt'l, Inc. v. Association of Corporate Counsel, et al.*, 450 F.3d 1179, 1186 (10th Cir. 2006) (citing *Frontier Ref., Inc. v. Gorman-Rupp Co., Inc.,* 136 F.3d 695, 704 n. 12 (10th Cir. 1998).

[30] *Gray v. Conner Industries, Inc.*, No. 20-1037-TC-GEB, 2021 WL 663203, at *3 (D.Kan. Feb. 19, 2021) citing *Quality Time, Inc. v. West Bend Mut. Ins. Co*., No. 12-cv-1008, 2012 WL 5499555, at *6 (Nov. 13, 2012).

[31] *Marten*, at *4 (D.Kan. 1998) (Citing *Boyer v. Board of County Comm'rs,* 162 F.R.D. 687, 688 (D.Kan.1995).

whether the threat of litigation is real and imminent."[32] A threat of litigation is real and imminent when there is a "substantial probability that litigation will ensue at the time the documents were drafted."[33]

Further, CNH must make a "clear showing" that the asserted objection applies.[34] In its Memorandum in Support of its Motion for Protective Order, CNH asserts it reasonably anticipated litigation because the threat of litigation was imminent. Such imminent threats included "a five-month OSHA investigation, a worker's compensation claim, and this lawsuit."[35] Courts look "to the primary motivating purpose behind the creation of the document to determine whether it constitutes work product."[36] "Materials assembled in the ordinary course of business or for other nonlitigation purposes are not protected by the work product doctrine."[37] The documents at issue must have been created based upon a request for legal advice, not just for a regular business purpose.[38] Although normally an investigation would not be protected by the work product doctrine, it is considered work product if conducted "under the supervision of an attorney" in preparation for the "real and imminent threat of litigation or trial."[39] In this case, the discovery in question was

---

[32] *Id.*

[33] *Quality Time, Inc.*, 2012 WL 5499555 at *6.

[34] *Marten,* citing *Ali v. Douglas Cable Communications, Ltd. Partnership*, 890 F.Supp. 993, 994 (D.Kan. 1995).

[35] ECF No. 84.

[36] *Deya v. Hiawatha Hospital Assoc. Inc., et al.*, No. 10-2263-JAR/GLR, 2011 WL 1559422, at *6 (D.Kan. April 25, 2011), citing *Presbyterian Manors, Inc. v. Simplexgrinnell, L.P.*, No. 09–2656–KHV, 2010 WL 3880027, at *6 (D.Kan. Sept. 28, 2010).

[37] *Id.*, citing *Marten,* No. 96–2013–GTV, 1998 WL 13244 (D.Kan. Jan. 6, 1998).

[38] *Id.* citing *Burton v. R.J. Reynolds Tobacco Co*., 177 F.R.D. 491, 498 (D.Kan. 1997).

[39] *Gray v. Conner Industries, Inc.*, No. 20-1037-TC-GEB, 2021 WL 663203, at *3 (D.Kan. Feb. 19, 2021) citing *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.,* 247 F.R.D. 656, 659 (D. Kan. 2007).

purportedly made at the direction of counsel, as a part of CNH's investigation, and upon CNH's request for legal advice.[40] Further, CNH employees contacted counsel, soliciting advice regarding the course of the investigation approximately two hours after the accident.[41] It is, therefore, reasonable for this Court to determine CNH anticipated litigation.

### i. Worker's Compensation.

CNH claims it reasonably felt under threat of a worker's compensation claim, which is considered "litigation" for purposes of the work product doctrine.  The parties in this case argue the purpose of worker's compensation is to avoid litigation, however, Kansas courts have found worker's compensation claims *to be* litigation for purposes of analyzing the work product doctrine. The court in *Heavin v. Owens-Corning Fiberglass,* analyzed the work product doctrine in connection with worker's compensation litigation.[42] In analyzing the Defendant's assertion of work product protection, the court attempted to determine whether certain documents were prepared by the claims adjuster in defense of worker's compensation litigation or prepared as a part of investigating and opening a claims file.[43] Plaintiff also argued the Defendant waived any right to privilege due to late service of its privilege log.[44]  However, the court found waiver was too harsh of a sanction and did not find the Defendant waived privilege.[45]  While the court could not make the

---

[40] ECF No. 84.
[41] *Id.*
[42] No. 02-2572-DHV-DJW, 2004 WL 316072, at *4 (D. Kan. Feb. 3, 2004).
[43] *Id.* at *5.
[44] *Id.*  at *1.
[45] *Id.* at *2.

ultimate determination without additional information in a supplemental privilege log from the Defendant in that case, its work product analysis was based upon the threat of worker's compensation litigation.[46]

At the time of its investigation, CNH argues it was under imminent threat of worker's compensation litigation.   CNH could have been named as a Defendant in worker's compensation litigation as Mr. Taylor's conceivable "special employer."[47] Although not cited by the parties or CNH, *Scott v. Altmar, Inc.,* involved a plaintiff who brought a tort claim against Altmar, Inc., ("Altmar") the company for which he performed work, while being an employee of a temporary agency, Davlin Services, Inc. ("Davlin.")[48] Altmar contracted with Davlin for temporary employees to perform construction work on its behalf.[49] The court found plaintiff was a special employee of Altmar as a "lent employee."[50] If a "special employer/employee" relationship is found to exist, (the three-prong test set forth in *Scott,*[51] must be analyzed to make that determination) the special employer, in this case CNH, has exposure for a worker's compensation claim. The injured employee (Mr. Taylor) is determined to be both a "special employee and a general employee, [and] he or she may look to either or both" of his employers for

---

[46] *Id.*

[47] *Scott v. Altmar, Inc.*, 272 Kan. 1280, 1284 (2002).

[48] *Id.* at 1281.

[49] *Id.*

[50] *Id.* at 1287.

[51] *Id at* 1284. ("When an employer lends an employee to another party, that party becomes liable for worker's compensation only if: (a) the employee has made a contract of hire, express or implied, with the second employer; (b) the work being done is essentially that of the second employer; and (c) the second employer has the right to control the details of the work.").

compensation.[52] If all three prongs of the *Scott* test are met, "both employers, (in this case ManPower and CNH) could have exposure for worker's compensation and both would have the benefit of the exclusivity defense to tort claims."[53] In this case, even though the Plaintiff chose to claim worker's compensation benefits against Manpower U.S., Inc., based on *Scott* and the occurrence of a fatal accident at its site, it was reasonable for CNH to believe worker's compensation litigation against it was imminent.

The parties argue CNH was a statutory employer of Mr. Taylor, as defined by K.S.A. 44-503(a).[54] They further assert CNH was never under threat of litigation because Mr. Taylor's worker's compensation claim was brought against Manpower U.S., Inc., instead of CNH.[55] While, ultimately, the Plaintiff did not bring a worker's compensation claim against CNH, CNH could have reasonably, at the time the documents were created, anticipated worker's compensation litigation. The death of Mr. Taylor at the CNH location, while CNH was likely either his special employer or statutory employer, created an imminent threat of worker's compensation litigation.

### ii.  OSHA.

OSHA was on-site at CNH's location 12 hours after the accident, investigating the circumstances surrounding Mr. Taylor's death.[56]  On March 23, 2020, OSHA issued a citation summary to CNH that included violations and monetary penalties.[57]  The

---

[52] *Id.* at 1283.
[53] *Id.* (citing 3 Larson's Workers' Compensation Law § 67.01[1], p. 67–2.). See also *Duarte v. DeBruce Grain, Inc. et al.*, 276 Kan. 597, 606 (2003).
[54] ECF No. 99.
[55] *Id.*
[56] ECF No. 84.
[57] *Id.*

possibility of litigation between OSHA and CNH terminated on April 15, 2020 when they entered into a settlement agreement regarding the violations and monetary penalty.[58] CNH was being investigated by OSHA from the time it was on-site at CNH, (4:00 p.m. on November 20, 2019) until April 15, 2020 when the settlement was reached.

While the Court found no Tenth Circuit authority specific to an investigation by OSHA, nor did the parties cite any, other jurisdictions have found governmental agency investigations, including an investigation by OSHA, trigger work product protection.[59]  In *McCoo v. Denny's*, the court considered whether the defendant waived work product protection by producing otherwise protected documents to the Kansas Human Rights Commission, ("KHRC.")[60]  For purposes of argument, the court assumed the documents were prepared by the defendant in anticipation of litigation with the KHRC, citing as authority *Martin v. Monfort, Inc.*, a Colorado case that found an investigation by a governmental agency provides reasonable grounds for anticipating litigation sufficient to trigger application of the work product doctrine.[61] While every fatality or serious accident

---

[58] *Id.*

[59] *In re Universal Service Fund Telephone Billing Practices Litigation*, 232 F.R.D. 669, n. 42 (D.Kan. July 26, 2005). But see *Baker v. Chevron USA, Inc. No.* 1:05-CV-227, 2009 WL 10679629, at *5 (S.D. Ohio June 8, 2009) (holding work product doctrine is applicable to administrative and regulatory proceedings); *Maertin v. Armstrong World Indus.,* 172 F.R.D. 143, 151 (D.N.J. 1997) (holding the work product doctrine applied to certain documents because the company had a subjective belief that litigation was anticipated with the EPA and OSHA); *Vermont Gas Sys., Inc. v. U.S. Fidelity & Guaranty Co.*, 151 F.R.D. 268, 275-176 (D.Vt. 1993) (finding documents protected when prepared in anticipation of EPA investigation); *In re Grand Jury Subpoena (Mark Torf/Torf Environemental Mgmt.*), 357 F.3d 900 (9th Cir. 2004) (protecting documents prepared by an environmental consultant); *Guzzino v. Felterman*, 174 F.R.D. 59, 63 (W.D. La. 1997) (concluding once an investigation by a federal agency has commenced, a corporation may reasonably be said to anticipate litigation.)

[60] No. 98-2458-RDR, 2000 WL 307315, at *1 (D. Kan. March 21, 2000).

[61] *Id.* and *Martin*, 150 F.R.D. 172. 173 (D.Colo.1993).

must be reported to OSHA, not every workplace incident must be reported, so not every

incident or minor accident in the workplace will trigger the threat of litigation with

OSHA.[62]  However, in this case, there was a fatal injury to Mr. Taylor, a near immediate

on-site response by OSHA, and subsequent penalties to CNH.  As such, CNH was under

threat of litigation with OSHA when the fatal accident occurred and when the documents

and tangible things in dispute were created.

### iii.     Privilege Log.

It is clear from Troy Williams' Affidavit,[63] Brian Schulte's Affidavit,[64] and CNH's

privilege log, the vast majority of photographs, videos and witness statements it objects

to producing were created at the instruction of counsel, as part of CNH's investigation, in

anticipation of imminent litigation. CNH, in its log, describes each document, the number

of pages or length of each document, and the basis for withholding the document.[65] CNH

also gives specific dates for the creation of all documents, excepting one.[66] But, several

entries in the privilege log do not specify who prepared the document.[67]

The burden is on CNH to provide enough information in its privilege log to enable

the Court, "to determine whether each element of the asserted privilege or protection is

satisfied."[68] As such, its privilege log should contain the following:

---

[62] 29 C.F.R. §1904.39.
[63] ECF No. 84, Exh. A.
[64] ECF No. 84, Exh. B.
[65] ECF No. 85, Exh. G.
[66] *Id.*
[67] *Id.*
[68] *Hill v. McHenry*, No. 99–2026, 2002 WL 598331, at *2 (D.Kan. Apr. 10, 2002) (citing  *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 680 (D.Kan. 2000));  *Jones v. Boeing Co.*, 163 F.R.D. 15, 17 (D.Kan.1995).

1. A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;

2. The date upon which the document was prepared;

3. The date of the document (if different from # 2);

4. The identity of the person(s) who prepared the document;

5. The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, "including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;"

6. The purpose of preparing the document, including an evidentiary showing, based on competent evidence, "supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;"

   a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, "that the documents do not contain or incorporate non-privileged underlying facts;"

7. The number of pages of the document;

8. The party's basis for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and

9. Any other pertinent information necessary to establish the elements of each asserted privilege.[69]

The Court reviewed CNH's privilege log in detail to determine whether it has sustained its burden with regard to each element of the asserted protection, specifically,

---

[69] *In re Universal Service*, at 673 (citing *Hill v. McHenry*, No. 99-2026, 2002 WL 598331, at *2 (D.Kan. Apr. 10, 2022).

whether the documents were prepared at the direction of its attorney, in anticipation of litigation, and under the imminent threat of litigation. While not providing all the required information,[70] CNH has provided enough information for the Court to make an assessment. Applying this standard, CNH has met its burden of demonstrating the following documents in its privilege log were created in anticipation of litigation:

(1) Witness Statements – Rows 286, 410, and 484.

(2) Rows 1-122, 132-201, 215-245, 361-364, 393-397, and 418.

There are, however, two entries in CNH's privilege log that cause the Court concern. CNH does not provide enough information to the Court regarding the witness statement summaries identified in row 278 of CNH's privilege log.  Specifically, CNH does not indicate when the document in row 278 was created. Additionally, the PowerPoint identified in row 391 was created on June 16, 2020, well after any threat of litigation to CNH would have dissipated. As such, the Court cannot find that these two documents were created at a time when CNH was under imminent threat of litigation.

### 3.  CNH did not Waive its Work Product Protections.

The parties contend, if the documents and tangible things are determined to be work product, CNH waived work product protection for the witness statements and summaries based upon two arguments: 1) CNH produced some witness statements to them after the meet and confer requirement; and 2) CNH referenced and summarized some of the witnesses' statements in the incident reports given to OSHA.[71] However, the parties do not

---

[70] *Id.*
[71] ECF No. 85.

cite any legal authority for this position.[72] The party asserting waiver of work product immunity has the burden of establishing waiver.[73] The parties have not met their burden.

In its briefing, the parties agree the witness statements and summaries for which it seeks protection were never provided to OSHA.[74] CNH may have referenced facts contained in those statements, but the work product doctrine shields the documents that are prepared; it does not protect the underlying facts or the facts contained within the work product.[75] As such, the Court cannot conclude CNH waived protections under the work product doctrine when it referenced and/or disclosed certain facts contained in the protected documents, particularly, because those underlying facts are not protected from discovery by the parties through other means such as depositions of the witnesses.

### 4. The Parties have Substantial Need for the Protected Documents but Fail to Show they Cannot Obtain the Substantial Equivalent by Other Means without Undue Hardship.

Rule Fed.R.Civ.P. 26(b)(3)(A) allows the parties to compel discovery of documents protected by the work product doctrine when, 1) they are otherwise discoverable under Rule 26(b)(1); and 2) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

---

[72] *Id.*
[73] *Western Res. Inc. v. Union Pacific R.R. Co.*, No. 00-2043, 2002 WL 181494, at *4; see also *ICE Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135, 2007 WL 4239453, at *3 (D.Kan. Nov. 30, 2007).
[74] ECF No. 92.
[75] *Resolution Trust Corp. v. Dabney,* 73 F.3d 262, 266 (10th Cir.1995).

Rule Fed.R.Civ.P. 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

CNH does not argue the documents and tangible things in dispute are not "otherwise discoverable" as contemplated by Rule 26(b)(3)(A).[76] Further, without the protection of the work product doctrine, the Court finds the documents and tangible things in dispute would be relevant to both parties' claims and defenses, meets the other requirements of Rule 26(b)(1) in this case, and would be otherwise discoverable by the parties.

The second prong of Rule Fed.R.Civ.P. 26(b)(3)(A) requires the discovering party to demonstrate "substantial need" and that it cannot obtain the "substantial equivalent" via other means without "undue hardship."[77] The party who wants documents that are protected by the work product doctrine bears the burden of "proof and persuasion."[78]  To pierce work product protection, the party must show, "the importance of the information to the preparation of its case and the difficulty it will face in obtaining substantially equivalent

---

[76] See ECF Nos. 84, 92, and 93.

[77] *Frontier Refining, Inc. v. Gorman-Rupp*, 136 F.3d 695, 704 (10th Cir. 1998).

[78] *Daya v. Hiawatha Hospital Assoc., Inc. et al.*, No. 10-2263-JAR/GLR, 2011 WL 1559422, at *7 (D.Kan. April 25, 2011) (citing *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 682 (D.Kan. 2000).

information from other sources if production is denied."[79] "The Court has broad discretion to determine whether the requisite showing has been made."[80]

### i. Photographs and Videos

The parties are in possession of discoverable photographs and videos of the area where Mr. Taylor's accident happened, some produced by CNH, and some taken by the parties during a site visit at the CNH location.[81] CNH previously produced OSHA's entire file, which is undisputed by the parties, that CNH acquired pursuant to a Freedom of Information Act request; this file included 70 minutes of audio files and 22 minutes of video.[82] With regard to photographs, CNH produced photographs taken in November 2019 and not subject to work product protection, including those photographs provided by CNH to OSHA and provided by OSHA to CNH.[83] CNH also produced a 19-minute video showing operation of the robotic arm.[84] Finally, on December 5, 2021, CNH allowed the parties to inspect the welding cell where Mr. Taylor was fatally injured, observe an operator calling in the robotic arm, and watch the arm placing and removing a chassis.[85] While the site visit was not ideal, counsel was allowed to stay as long as they wanted that day and to take any photographs and videos.[86] It should be noted, at the time of this on-site inspection

---

[79] *McCoo*, 192 F.R.D. at 684 citing *Blair v. United States*, No. 87–4140–RDR, 1990 WL 171058, at *2 (D.Kan. Oct.3, 1990).

[80] *Id.* at 684 (citing *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F2d. 1007, 1019, 1021 (1st Cir. 1988)).

[81] ECF No. 84.

[82] *Id.*

[83] *Id.*

[84] *Id.*

[85] *Id.*

[86] *Id.*

on December 10, 2019, the accident scene (welding cell OP-260) had been modified by CNH.[87] It was no longer in the same condition as it was on the date of the accident.

The parties have received numerous photographs and over 40 minutes of video created either by CNH or OSHA. The parties argue there is a substantial need for photographic and video evidence taken shortly after the accident, especially since welding cell OP-260 was later modified. During oral arguments, the Court specifically inquired as to what photographic angles or depictions the parties needed that were not produced by CNH. The parties did not adequately explain what equipment or area they want photographs of that are not seen in the photographs previously produced by CNH. They did identify one video, which is a depiction of the entire process of the robotic arm placing and removing a chassis. The parties argued this is one specific video they have substantial need for that was not produced by CNH, which they indicate cannot be obtained through other means, and the Court agrees. The Court cannot discern which row in CNH's privilege log references this video. As such, so long as such a video exists, CNH shall produce it to the parties forthwith.

However, the Court is convinced that all other remaining photographic and video evidence either has been obtained or can be obtained through other means by CNH producing the non-privileged photographs and videos it created and producing the photographs and videos created by OSHA.

---

[87] ECF No. 85.

## ii.    Witness Statements

CNH produced 70 minutes of audio files, witness statements and interviews created by OSHA.[88] It also produced six separate witness statements which CNH could not establish were prepared at the instruction of its counsel.[89] CNH has not produced row 278 of its privilege log which references undated witness statement summaries.  Because the summaries are undated, the Court cannot determine whether this document was created before or after counsel was brought into CNH's investigation, and it shall be produced forthwith.

With regard to the remaining witness statements, again, the Court agrees with the parties there is substantial need for the information in the statements and the information is likely crucial to their respective cases.  However, the parties have not shown the information contained in the privileged documents cannot be obtained through other means.  CNH asserts there are no eyewitnesses to the accident, and the parties have not yet deposed the witnesses who arrived on the scene after Mr. Taylor was injured and provided statements to CNH.[90] The Court recognizes, once depositions are concluded, the parties may find that a witness does not fully recollect the events that transpired on November 20, 2019, or a witness may be unavailable.[91]  In that event, it may foreclose the parties' ability to obtain the information they seek through other avenues of discovery. Nevertheless, at

---

[88] ECF No. 84.

[89] *Id.*

[90] ECF No. 89.

[91] *McBride v. Medicalodges, Inc.* No. 06-2535-JWL, 06-2536-JWL, 06-2538-JWL, 2008 WL 2157114, at *2 (D.Kan. May 22, 2008) (holding party did not prove information it sought in a privileged witness statement was not available through other means because the party had not first taken steps to exhaust reasonable efforts to locate and depose the witness.).

this time, the parties have not shown to the Court the information contained in the witness statements cannot be obtained through other means.

## IV.  Conclusion.

**IT IS THEREFORE ORDERED** that CNH's Motion for Protective Order **(ECF No. 83)** is **GRANTED** in part and **DENIED** in part.  Likewise, the Parties' Motion to Compel **(ECF No. 85)** is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** CNH shall produce the documents described in row 278 of its privilege log to the parties forthwith. The remaining portions of the Parties' Motion to Compel regarding the witness statements is **DENIED** without prejudice as to re-filing.

**IT IS FURTHER ORDERED** CNH shall produce to the parties the PowerPoint identified in row 391 of its privilege log forthwith.

**IT IS FURTHER ORDERED** CNH shall not be required to produce: rows 1-122, 132-201, 215-245, 286, 361-364, 393-397, 410, 418 and 484 of its privilege log. Notwithstanding this ORDER, CNH **shall produce**, forthwith, video in its possession or control, showing the full process of the robotic arm placing and removing a chassis, taken after the accident but before changes were made to welding cell OP-260.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 15th day of July 2022.


  s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge